# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES | CRIMINAL ACTION |
| v. | |
| NATHANIEL GRIFFIN | NO. 07-374-02 |

DuBOIS, J.                                                                                                      May 7, 2021

## **M E M O R A N D U M**

### I.      INTRODUCTION

*Pro se* defendant, Nathaniel Griffin, is an inmate at FCI Allenwood Medium. Presently before the Court are *pro se* defendant's motions for compassionate release. *Pro se* defendant argues that compassionate release is warranted based on his race, medical conditions, and the conditions at FCI Allenwood Medium. For the reasons that follow, the motions are denied.

### II.     BACKGROUND

#### A.  Crimes of Conviction

On July 23, 2009, *pro se* defendant pled guilty to one count of conspiracy to commit armed bank robbery, in violation of 18 U.S.C. § 371; one count of armed bank robbery, in violation of 18 U.S.C. § 2113(d); and one count of possession of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). On July 6, 2010, *pro se* defendant was sentenced to, *inter alia*, to 272 months' imprisonment.

*Pro se* defendant has served approximately 166 months in custody, which, with good time credit of twenty-two months, is approximately 188 months. The Government reports that *pro se* defendant's anticipated release date is November 24, 2026. Document No. 342 at 3.

### B. Prior Conduct

*Pro se* defendant has an extensive criminal history, including convictions for aggravated assault and intimidation of a witness in April 2006. PSR ¶¶ 62, 64. His criminal history also includes a conviction for simple assault in March 2004 and two drug-related convictions in March 2004 and April 2006, respectively. *Id.* ¶¶ 55, 58, 59.

### C. Motions for Compassionate Release

*Pro se* defendant filed the pending Motion for Compassionate Release and Supplemental Motion for Compassionate Release on September 29, 2020 and January 4, 2021, respectively. In support of the motions, *pro se* defendant states that he is at increased risk of contracting COVID-19 because he suffers from asthma, "has [the] early stages of fatty liver disease," is a former smoker, and is an African American. Document No. 340 at 3; Document No. 344 at 7. He also claims FCI Allenwood Medium is "dealing with a significant outbreak of COVID-19." Document No. 344 at 2.

*Pro se* defendant's medical conditions are documented in his medical records. Def.'s Med. R., Document No. 348. The medical records disclose that *pro se* defendant was diagnosed with asthma on December 10, 2009. *Id.* at 48. On February 21, 2020, according to the records, it was determined that *pro se* defendant "likely [had] Fatty Liver Disease." *Id.* at 94. On the same date, he reported "feel[ing] good" and had "no complaints." *Id.* On August 12, 2020, *pro se* defendant claimed his asthma was "worsening"—as a result, he was prescribed an Albuterol inhaler to be used "as needed." *Id.* at 86, 127. His medical records also state that he has used "tobacco products," but has "never smoked" and has no history of "tobacco abuse." *Id.* at 3, 129, 154. Finally, his records note that he is a thirty-nine-year-old "exercise class instructor" who

"exercise[s] regularly." *Id*. at 14. "For the past several years, [*pro se* defendant] has been [an] instructor for spin classes and several cardio fitness classes." Document No. 344 at 28.

*Pro se* defendant claims that he has "used his time while incarcerated to better himself and increase the likelihood of a smooth reentry into society." *Id.* at 16. He further asserts that, while incarcerated, he has "completed 88 BOP programs," "earned his GED," and "completed a Pennsylvania Department of Transportation certificate that will enable him to [work] . . . on state-run construction projects." *Id*. at 16–17.

With respect to his conduct in custody, the Government reports that *pro se* defendant "was found in possession of a dangerous weapon" in 2014 and committed an assault in 2018. Document No. 342 at 3. In response to the allegation that he committed an assault in 2018, *pro se* defendant submitted two letters from Recreation Specialists at FCI Allenwood Medium. The Recreation Specialists assert that he received a "minor assault charge" in 2018 for "stopp[ing] an attempted sexual assault of a transgender inmate." Document No. 344 at 26–29.

The Government responded to *pro se* defendant's Motion for Compassionate Release and Supplemental Motion for Compassionate Release on December 29, 2020 and February 8, 2021, respectively. On April 19, 2021, *pro se* defendant filed a Response to the Government's Opposition. The motions are thus ripe for decision.

### III. DISCUSSION

#### A. Applicable Law

*Pro se* defendant seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018). Section 3582(c)(1)(A)(i) permits a federal prisoner to petition a court for compassionate release for "extraordinary and compelling reasons" after first filing a request for compassionate release with

the prison warden.[1]  18 U.S.C. § 3582(c)(1)(A)(i).  Generally, "extraordinary" means "[b]eyond what is usual, customary, regular, or common" and a "compelling need" is a "need so great that irreparable harm or injustice would result if it is not met."  *United States v. Rodriguez*, 451 F. Supp. 3d 392, 401 (E.D. Pa. 2020) (quoting *Extraordinary*, Black's Law Dictionary (11th ed. 2019)).

"Extraordinary and compelling reasons," for purposes of § 3582(c)(1)(A)(i), were previously defined by a policy statement in § 1B1.13 of the Sentencing Guidelines, which cites the (A) medical condition, (B) age, (C) family circumstances of the defendant, and (D) "reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)," as determined by the Bureau of Prisons ("BOP").  U.S.S.G. § 1B1.13 cmt. n.1.  This policy statement, which was adopted before the First Step Act, does not account for the fact that defendants may now file their own motions for compassionate release.[2]  Thus, as a majority of district courts and all of the courts of appeals that have spoken on the issue have held, § 1B1.13 is not an "applicable policy statement" in the context of defendant-filed motions.[3]  *See United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020) ("join[ing] three other federal courts of appeals that recently have considered this question"); *United States v. Pollard*, No. 10-633-1, 2020 WL 4674126, at *5 n.5 (E.D. Pa. Aug. 12, 2020) (collecting district court cases).  Thus, when a defendant files a motion for compassionate release on his own behalf—as *pro se*

---

[1] On August 3, 2020, *pro se* defendant submitted a request for compassionate release to the Warden of FCI Allenwood Medium.  The parties do not dispute that *pro se* defendant has exhausted his administrative remedies.

[2] The Sentencing Commission currently lacks the quorum required to amend the Sentencing Guidelines.  U.S. Sentencing Comm'n, Annual Report 2–3 (2019), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2019/2019-Annual-Report.pdf.  Thus, as many courts have recognized, the Guidelines have not been updated in response to the First Step Act.  *See, e.g.*, *United States v. Brooker,* 976 F.3d 228, 234 (2d Cir. 2020).

[3] The Court notes that "[t]he existing policy statement continues to govern BOP-filed motions for compassionate release."  *McCoy*, 981 F.3d at 282 n.7 (citing *United States v. Jones*, 980 F.3d 1098, 1109–10 (6th Cir. 2020)).

4

defendant has done in this case—a district court may exercise its discretion to define "extraordinary and compelling reasons."

The Third Circuit has held that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 954, 597 (3d Cir. 2020). Moreover, "the existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner." *United States v. Roeder*, 807 F. App'x 157, 161 n.16 (3d Cir. 2020). Therefore, a general fear of contracting COVID-19 alone does not satisfy the "extraordinary and compelling reasons" requirement of the statute. *United States v. Ramirez-Ortega*, No. 11-251-07, 2020 WL 4805356, at *2 (E.D. Pa. Aug. 18, 2020) (DuBois, J). However, an inmate may be able to establish extraordinary and compelling circumstances when the inmate suffers from a medical condition that the CDC has identified as a risk factor for COVID-19. *Rodriguez*, 451 F. Supp. 3d at 402.

"Not every defendant who presents a qualifying extraordinary and compelling reason is entitled to relief under Section 3582(c)(1)(A)." *United States v. Babbitt*, No. 18-384, 2020 WL 6153608, at *9 (E.D. Pa. Oct. 21, 2020). Before granting compassionate release, a court must consider (1) whether the defendant would present a danger to the community under 18 U.S.C. § 3142(g); and (2) whether a sentence reduction would be consistent with the factors enumerated in 28 U.S.C. § 3553(a). *Babbitt*, 2020 WL 6153608, at *9. To determine whether a defendant would be a danger to the community, the Court considers "the nature and circumstances of the offense charged," "the history and characteristics of the person," including "the person's character, physical and mental condition, family ties, . . . community ties, past conduct, history relating to drug or alcohol abuse, [and] criminal history," and "the nature and seriousness of the

5

danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). Then, § 3553(a) instructs the court to "impose a sentence 'sufficient, but not greater than necessary' to accomplish the goals of sentencing." *Kimbrough v. United States*, 552 U.S. 85, 101 (2007) (quoting 18 U.S.C. § 3553(a)). The § 3553(a) factors include:

> (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide punishment, deter criminal conduct and protect the public from further crimes by the defendant; (3) the kinds of sentences and sentencing ranges available; and (4) the need to avoid unwarranted sentence disparities among defendants committing similar offenses.

*Babbitt*, 2020 WL 6153608, at *10 (citing 18 U.S.C. § 3553(a)). Ultimately, compassionate release is appropriate only when there are extraordinary and compelling circumstances, the defendant's release would not pose a danger to the community, and release would be consistent with the § 3553(a) factors.

### B. Analysis

#### 1. Extraordinary and Compelling Reason

The Court first considers whether *pro se* defendant has presented an extraordinary and compelling reason warranting compassionate release. *Pro se* defendant argues that compassionate release is warranted based on his race, medical conditions, and the conditions at FCI Allenwood Medium.[4]

As a preliminary matter, the Government acknowledges that "there have been outbreaks" of COVID-19 at FCI Allenwood Medium. Document No. 342 at 8. However, "an outbreak at the defendant's correctional institution, standing alone, does not satisfy the extraordinary and

---

[4] *Pro se* defendant also argues compassionate release is warranted because he was improperly "sentenced as a career offender under the Armed Career Criminal Act." Document No. 344 at 17. The Court rejects this argument. As the Government correctly states, the ACCA "was not applied in this case." Document No. 353 at 10 n.1. *Pro se* defendant was convicted of armed bank robbery, conspiracy to commit armed bank robbery, and possession of a firearm during and in relation to a crime of violence—he was not sentenced under the ACCA.

6

compelling reasons requirement." *United States v. Gonzalez*, No. 02-446, 2021 WL 1088258, at *3 (E.D. Pa. Mar. 22, 2021) (DuBois, J.). The Court thus considers whether, in light of the conditions at FCI Allenwood Medium, *pro se* defendant's race and medical conditions present extraordinary and compelling reasons warranting compassionate release.

   a. *Pro se* Defendant's Race

As discussed *supra*, *pro se* defendant claims he is at increased risk of contracting COVID-19 because he is African American.

Courts in this Circuit have consistently rejected the conclusion that a defendant's race places him at increased risk of contracting COVID-19. *See, e.g., United States v. Bell*, No. 15-60332, 2021 WL 303009, at *3 (D.N.J. Jan. 29, 2021) (rejecting conclusion that 39-year-old African American's race placed him at increased risk); *United States v. Alexander*, No. 19-32, 2020 WL 2507778, at *4 (D.N.J. May 15, 2020) (rejecting conclusion that 44-year-old African American's race placed him at increased risk). For example, the court in *Alexander* recently stated: "although African Americans are overrepresented in data regarding COVID-19 hospitalizations and deaths in America as a whole, this overrepresentation may result from other systemic economic and social issues affecting the African American community . . . ." *Alexander*, 2020 WL 2507778, at *4. The court in *Alexander* concluded that "it is unclear whether Defendant's race places him at a greater risk of contracting COVID-19." *Id*.

The Court agrees with the reasoning in *Alexander*. It is undisputed that "African Americans are overrepresented in data regarding COVID-19 hospitalizations and deaths." *Id*. However, in light of the fact that "this overrepresentation may result from other systemic economic and social issues," *pro se* defendant has failed to demonstrate that his race places him at increased risk of contracting COVID-19. *Id*.

7

b. *Pro se* Defendant's Medical Conditions

As discussed *supra*, *pro se* defendant claims he is at increased risk of contracting COVID-19 because he is a former smoker, and he suffers from asthma and the "early stages of fatty liver disease." Document No. 340 at 3.

The CDC has advised that "[h]aving chronic liver disease" or being a former cigarette smoker "can make you more likely to get severely ill from COVID-19." CDC, People With Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (accessed May 6, 2021). Similarly, the CDC has reported that "[p]eople with moderate-to-severe or uncontrolled asthma are more likely to be hospitalized from COVID-19." *Id*.

Although it was determined on February 21, 2020 that *pro se* defendant "likely" has "fatty liver disease," he reported "feel[ing] good" with "no complaints" on that date. Def.'s Med. R., Document No. 348 at 94. Further, *pro se* defendant's medical records state that he has "never smoked" and he has no history of "tobacco abuse." *Id*. at 3, 154. He also has been in federal custody since 2010, where smoking is banned. Although the medical records note that *pro se* defendant was prescribed an Albuterol inhaler to be used "as needed" for his asthma, he continues to work as an "exercise class instructor" who "exercise[s] regularly." *Id*. at 14. "For the past several years, [*pro se* defendant] has been [an] instructor for spin classes and several cardio fitness classes." Document No. 344 at 28. On the present record, the Court concludes that *pro se* defendant's medical conditions, viewed in the context of his regular activity as an exercise class instructor, do not present an extraordinary and compelling reason warranting compassionate release.

2. <u>Danger to the Community Under 18 U.S.C. § 3142(g)
   and 18 U.S.C. § 3553(a) Factors</u>

Even if *pro se* defendant presented an extraordinary and compelling reason, compassionate release would be inappropriate in this case because *pro se* defendant presents a danger to the community under § 3142(g) and the § 3553(a) factors counsel against release.

The Court concludes that, in light of his crimes of conviction and prior offenses, *pro se* defendant would pose a danger to the community under 18 U.S.C. § 3142(g) upon his release. *Pro se* defendant's criminal history includes convictions for aggravated assault and intimidation of a witness. Further, in this case, *pro se* defendant was convicted for armed bank robbery. These are serious and dangerous offenses. *See, e.g., United States v. Moore*, No. 14-209, 2020 WL 7024245, at *7 (E.D. Pa. Nov. 30, 2020) (concluding that defendant presented a danger to the community based on "[t]he serious and violent nature" of his armed bank robberies).

The § 3553(a) factors also counsel against release. *Pro se* defendant has an extensive criminal history which includes violent crimes. Further, given his anticipated release date of November 24, 2026, *pro se* defendant has served only approximately 70% of his sentence after adjustment for good time credit. Although the Court recognizes *pro se* defendant's rehabilitation efforts, he has failed to show that the time he has served reflects the seriousness of the offenses, promotes respect for the law, and provides just punishment as required by § 3553(a). *See United States v. Stratton*, No. 05-68, 2021 WL 38004, at *4 (E.D. Pa. Jan. 5, 2021) (denying compassionate release to defendant convicted of armed bank robbery with anticipated release date

in 2023 because the nature of "his actions and the seriousness of his offense certainly outweigh all other § 3553(a) factors.").[5]

### IV. CONCLUSION

For the foregoing reasons, *pro se* defendant's Motion for Compassionate Release and Supplemental Motion for Compassionate Release are denied. An appropriate order follows.

---

[5] In its response to the Supplemental Motion for Compassionate Release, the Government notes that *pro se* defendant filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion") in 2014, and "[t]his Court has not ruled" on that motion. Document No. 353 at 10. *Pro se* defendant's § 2255 Motion, as amended by his Amended Motion to Correct Sentence (Document No. 312, filed May 11, 2016), seeks relief based on *Johnson v. United States*, 576 U.S. 591 (2015). By Administrative Order issued by the Chief Judge on May 16, 2016, and this Court's Order on May 7, 2021, all motions filed under § 2255 seeking collateral relief based on *Johnson* are stayed.